Nash, J.
 

 The instruction given to the jury, in substance is, if the facts enumerated did exist, in
 
 law,
 
 the plaintiffs could not recover. This could not be, we think, unless
 
 they
 
 had transferred the slave to some other person. It is admitted that the legal title to the slave had been in the plaintiffs ; have they, in any mode known to the law, parted with it ? By the law of this State, all sales of slaves must be in writing, except where delivery accompanies the sale, or it is void, and all gifts must be evidenced by a bill of sale. In neither of these modes, have the plaintiffs parted with their title. But it is alleged, that the circumstances, proved in the case, amount either to an estoppel, or to a conveyance by them. We think neither conclusion is correct. The fact, that a person was present, when property, claimed by him was sold, without making known his title, amounted to an estoppel, was decided in
 
 Bird
 
 v.
 
 Benton, 2
 
 Dev. 180. That case, however, has been over-ruled by those of
 
 Governor
 
 v.
 
 Freeman,
 
 4 Dev. 474, and
 
 Lentz
 
 v.
 
 Chambers, 5
 
 Ire. 587. The principles governing this case are laid down by the Court in the case of
 
 Jones
 
 v.
 
 Sasser,
 
 1 Dev. & Bat. 462. There it was contended, that the plaintiff, by his concealment and
 
 misrepresentations
 
 of the ownership of the property, was estopped and concluded from setting up any claim to the injury of those, whom he had thus imposed on and deceived. It was ruled, that even misrepresentation, coupled with concealment, was no estoppel, and that there was no such rule of
 
 law,
 
 which
 
 *166
 
 precluded the plaintiff from showing his title. In this case there is no pretence, that the plaintiffs were guilty of either concealment or misrepresentation — there is no evidence that they knew of their title. For, although it is under the will of Joseph Watson, that they claimed, yet it was a matter of construction; and that they were ignorant of it, is strongly implied by one of the acts, upon which the defendant relies, to-wit: The purchase by Kilpatrick of the negro Sylva, to whom their title was just as good as that to Reuben, both being included in the deed of trust. It is difficult to imagine a motive, in making the purchase of her consistent with a knowledge of their title, unless upon the ground of fraud, which is not pretended. But even if they did know it, it would not alter the case in this Court. The case of
 
 Sasser
 
 further decides, that to hold, that the representations or misrepresentations of a party could transfer the title to another person, would be to violate the positive law of the State. That case is supported by that of
 
 Pickard
 
 v.
 
 Sears and Barratt,
 
 33, En. C. L. R. 117. That was an action of trover for machinery. The property had belonged to one Metcalf, who had mortgaged it to the plaintiff, to secure a debt due to him. Metcalf was permitted to retain the possession, and use the machinery. While so in his por session, it was levied on to satisfy an execution against him, and at the sale, the defendant purchased. It was proved on the trial at
 
 nisi prius
 
 before Lord Den-man, that the plaintiff, before the sale, had frequent conversations with the attorney of the defendants, concerning the machinery, and advised with him, as to the best mode of
 
 raising money
 
 on it to pay off the execution, and that he knew of the intention to sell, but at no time made known the fact of the mortgage. His Lordship refused to leave it to the jury, to say, whether the plaintiff had not concurred in the sale, on the ground that there was no evidenco of such concurrence. In delivering the opinion
 
 *167
 
 of the King’s Bench upon a rule for a new trial, he says that the plaintiff, having a “ good title to the machinery, could not be divested of it, but by a sale or gift.” He concludes, as to the ground, upon which a new trial was granted, as follows, “We think his (the plaintiff’s) conduct, in the standing by and giving a kind of “ sanction to the proceedings under the execution, was a fact of such a nature, that the opinion of the jury ought to have been taken, whether he had not, in point of fact, ceased to be owner.” Not that the facts-set forth, themselves, deprived the plaintiff of his title, but whether they were not of such a nature, as to satisfy them, that, before the sale, he had, in fact, divested himself of the title to the property, in one of the ways, known to the law, and previously stated by him, to wit : by gift or sale.
 

 We are of opinion that the Judge below erred in stating to the jury, that if they believed the circumstances existed, as enumerated by him, the plaintiffs could not recover. Those circumstances might be some slight evidence of the fact, that, before the sale, the plaintiffs had, by the means known to the law, transferred their title to Reuben to some other person, and, thereby, ceased to be the owners. Sitting in a Court of Law, we cannot enter into questions of Equity or hardship. These are considerations, which belong to another and distinct tribunal
 
 Sasser
 
 v.
 
 Jones,
 
 3. Ire. Eq. 19. We think the action was properly brought in the names of the wives as well as in those of the husbands. Wherever the suit will survive to the wife, she may be joined in the action.
 
 Dunstan
 
 v.
 
 Burweld,
 
 1 Wil. 224.
 

 Per Curiam. Judgment reversed and a
 
 venire de novo
 
 awarded.