NICHOLSON v. RAILROAD.

(Filed May 25, 1905.)

*Fellow Servant Act—Construction of—"Operating" Rail-
road.*

The Fellow Servant Act, (Priv. Laws 1897, Ch. 56), giving any em-
ployee of a railroad "operating" in this State, a cause of action
for injuries suffered by the negligence of a fellow servant applies
to any injury suffered by any employee in any department of
work of a railroad which is being operated, but does not apply to
an employee engaged in building a trestle for the extension of a
railroad, at a point some miles from the track on which trains
are being operated.

ACTION by William Nicholson against the Transylvania
Railroad Company, heard by *Judge G. S. Ferguson* and a
jury, at the October Term, 1904, of the Superior Court of
JACKSON County. From a judgment for the plaintiff, the
defendant appealed.

*Coleman C. Cowan* for the plaintiff.
*Geo. A. Shuford; W. A. Gash, Walter E. Moore* and *Shep-
herd & Shepherd* for the defendant.

CLARK, C. J.   The evidence tended to show that the plain-
tiff was injured by the negligence of a fellow servant, and
the defendant asked the court to charge that if the jury should
find such to be the fact and "should further find from the
evidence that the defendant, although a railroad corporation
operating a railroad in this State, was not operating a rail-
road at the point where the plaintiff received his alleged in-
jury, nor within a nearer distance to said point than five or
six miles, and had laid no track at said point nor within said
distance from said point, but was engaged in constructing a
railroad at said point, and the plaintiff was employed at said
time as a construction hand and was engaged in the work of

building a trestle at said point, and while so engaged was injured by the negligence of said fellow servant, then the plaintiff is not entitled to recover and the jury will answer the third issue 'no.' "  The refusal of this prayer was error.

The "fellow servant act," unaccountably printed in *Private* Laws 1897, Chapter, 56, provides "Section 1, that any servant or employee of any railroad company operating in this State, who shall suffer injury to his person, or the personal representative of any such employee who shall have suffered death, in the course of his services or employment with said company, by the negligence, carelessness or incompetency of any other servant, employee or agent of the company, or by any defect in the machinery, ways or appliances of the company, shall be entitled to maintain an action against such company," and section 2 renders nugatory any waiver, express or implied, of the benefit of said act.

The recent origin, and the reason of the rule exempting the master from liability for the negligence of a fellow servant, were first discussed in this court in *Hobbs v. Railroad,* 107 N. C., 1, and attention was called to the fact that the rule had been abrogated as to railroad employees by statute in many States.  After the passage in this State in 1897 of the above cited statute abolishing the fellow servant doctrine as to railroad employees, the act was fully discussed and its constitutionality sustained in *Hancock v. Railroad,* 124 N. C., 222; *Coley v. Railroad,* 128 N. C., 534, and in the same case on rehearing, 129 N. C., 407, and that ruling has been sustained in all the cases since, and similar statutes in other States have been held not in violation of the Fourteenth Amendment by several decisions of the United States Supreme Court.

In *Mott v. Railroad,* 131 N. C., 237, it was sought to curtail and restrict the act so that it should apply only to railroad employees engaged in operating trains, but the court held to the contrary and said "the language of the statute is both comprehensive and explicit.  It embraces injuries sus-

tained by (quoting the act) '*any* servant or employee of any railway company  *  *  *  in the course of his *services or employment* with said company.'   The plaintiff was an employee and was injured in the course of his service or employment."   In that case the plaintiff, working in the repair shops, was injured by the negligence of a fellow servant while removing a red-hot tire from an engine, and it was held that he could recover.

The same ruling was repeated in *Sigman v. Railroad,* 135 N. C., 184, where it is said: "The plaintiff was injured by the negligence of a fellow servant while working upon and repairing a bridge of the defendant railroad.   It is settled that the fellow servant law, chapter 56, Private Laws 1897, applies to railroad employees injured in the course of their service or employment with such corporation, whether they are *running trains* or *rendering any other service."*   Then after quoting the above extract from *Mott v. Railroad,* 131 N. C., 237, it is added that to the same effect were *"Railroad v. Pontius,* 157 U. S., 209, cited since with approval in *Tullis v. Railroad,* 175 U. S., 352; *Railroad v. Harris,* 33 Kan., 416; *Railroad v. Koehler,* 37 Kan., 463; *Railroad v. Stahley,* 62 Fed. Rep., 363, and many other cases."   To these we now add (from among many) the well considered case of *Callahan v. Railroad* (Mo.), 60 L. R. A., 249, which reviewing the authorities to that time (it was filed December, 1902,) holds with this court that "a statute making a railroad company liable for injuries to servants through the negligence of fellow servants does not violate the equality clause of the Federal Constitution, although it does not confine such liability to acts performed in the operation of trains, but extends it to risks similar to those incurred by the employees of persons or corporations engaged in other lines of work."

Knowing from the history of the strenuous discussion for and against the passage of the act and from its language as well, that the intention of the legislature was that the doc-

trine of the non-liability of the master for injuries to an employee caused by the negligence of a fellow servant should be abolished as to all employees in railroad service, "whether (as we have said in *Sigman v. Railroad, supra,*) they are running trains or rendering any other service," we have no disposition to do other than to affirm fully our rulings already made and cited above. But the act applies only to employees of a "railroad operating," not that such employees must be operating the trains, but they must be employees in some department of its work, of a railroad which is being operated. Such business is a distinct, well known business, with many risks peculiar to itself and all the employees in such business whether running trains, building or repairing bridges, laying tracks, working in the shops or doing any other work in the service of an "operating railroad," are classified and exempted from the rule which requires employees to assume the risk of all injuries which may be caused by the negligence of a fellow servant. It is not necessary to show that the plaintiff was injured by a fellow servant while operating a train, but he must "show that he was injured while performing a service necessary to, or connected with, the use and operation of the road." *Railroad v. Vincent,* 56 Kan., 344; *Stubbs v. Railroad,* 85 Mo. App., 192; *Thompson v. Railroad,* 54 Ga., 509; *Railroad v. Ivey,* 73 Ga., 504.

Here the railroad was being "constructed," not "operated." It was 5 or 6 miles from the completed track, still farther from the track on which trains were being operated. Though it was in the construction of the extension of a railroad, the work was that of building a bridge or trestle and the liabilities of the employer were the same as those of any one else engaged in bridge building. It does not matter that elsewhere the same employer was "operating" a railroad. It was not doing so at this point. Here it was not a railroad at all. It was constructing, building, what later would become a part of an "operating railroad."

It is true an employee injured by the negligence of a fellow servant while building or repairing a bridge on the line of an operating railroad, under precisely similar circumstances could recover of the railroad company while here he can not. That is because the statute must draw the line somewhere, and the legislature has seen fit to restrict the repeal of the former law to "any servant or employee of any railroad company *operating*" in this State, which means in the course of its "operation" of that business, in any of its departments, but not in the course of its "construction."

We must read the act as it has been written by the lawmaking power, neither restricting nor extending its effect. For the error in refusing this prayer there must be a

New Trial.